UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DAVID HIXSON and ALISON HIXSON )
)
      Plaintiffs, )
) No. 1:12-cv-105
v. )
) Judge Curtis L. Collier
WILSON AND ASSOCIATES, PLLC, )
GREEN POINT MORTGAGE FUNDING, )
INC., and JP MORGAN CHASE BANK, N.A. )
)
      Defendants. )

## **M E M O R A N D U M**

Before the Court are two motions for summary judgment filed by Defendants JP Morgan Chase Bank, NA ("Chase") and Green Point Mortgage Funding, Inc. ("Green Point") (collectively, "Defendants") (Court File Nos. 21, 24). Defendants each seek judgment as a matter of law on the complaint filed by Plaintiffs David Hixson and Alison Hixson ("Plaintiffs").[1] Plaintiffs seek an injunction against Defendants preventing them from foreclosing on Plaintiffs' property.[2] The parties

---

[1] After Defendants filed the instant motions, Plaintiffs' attorney moved to withdraw as counsel. The Magistrate Judge granted this motion (Court File No. 48) and the Court subsequently provided Plaintiffs, now proceeding *pro se*, additional time to respond.

[2] Plaintiffs filed an amended complaint after the briefing on these motions raising a bevy of new claims, including claims under the Fair Debt Collections Practices Act, the Tennessee Consumer Protection Act, and the Real Estate Settlement Procedures Act, as well as breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel. However, Plaintiffs may not amend their complaint in this context without leave of the Court. *See* Fed. R. Civ. P. 15(a)(2) (requiring the opposing party's written consent or leave of the court to amend a pleading unless the pleading is amended as a matter of course within twenty-one days after serving it or within twenty-one days after a responsive pleading). Subsequently, Chase filed a motion to strike the amended complaint and Plaintiffs filed a motion for leave to amend their complaint (Court File Nos. 73, 74). Although the Court may grant leave freely when justice requires, the Court will not allow Plaintiffs to amend their complaint at this very late stage of the litigation. Chase's motion to strike will be **GRANTED** (Court File No. 73) and Plaintiffs' motion to amend will be **DENIED** (Court File No. 74).

dispute whether Chase is entitled to enforce the Promissory Note ("Note) because the Note contains two canceled endorsements.

Also, while these motions were pending, Plaintiffs filed a motion to refer the case to mediation (Court File No. 61). Green Point responded in opposition (Court File No. 63), although Chase never filed a response. Given the very late stage of this litigation, the Court will not refer this case to mediation. Accordingly, Plaintiffs' motion will be **DENIED** (Court File No. 61).

For the following reasons, the Court agrees with Chase it is the proper holder of the Note, and will **GRANT** Defendants' motions for summary judgment (Court File No. 21, 24).

I.   **FACTUAL BACKGROUND**

On August 14, 2003, Plaintiffs executed a Promissory Note in the amount of $475,000. The Note was originally executed in favor of Green Point. The Note was secured by a Deed of Trust and property located in Chattanooga, Tennessee. The Deed of Trust acknowledges that the Note may be sold one or more times without prior notice to Plaintiffs (Court File No. 1-2, p. 29, ¶ 20).

An allonge attached to the Note contains three endorsements. The first endorsement is to "U.S. Bank, NA as custodian/trustee" signed by Thomas Mitchell, Vice President of Green Point. The second endorsement, signed by Jim Patterson, President on behalf of U.S. Bank, was in blank. Both of these endorsements have the word "canceled" stamped over them twice. Finally, the third endorsement was signed by Jordan Fox on behalf of Green Point and was endorsed to JP Morgan Chase Bank as trustee. These endorsements are not dated.

On February 21, 2012, Defendant Wilson & Associates, PLLC[3] sent Plaintiffs a notice of trustee's sale and described itself as successor of trustee. Wilson & Associates informed Plaintiffs

---

[3] Wilson & Associates was voluntarily dismissed from this action (Court File No. 13).

the foreclosure sale would be March 26, 2012. Plaintiffs filed a verified complaint and temporary restraining order in state court. Chase later removed to this court.

**II.     STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The Court is cognizant that Plaintiffs filed a *pro se* response to Chase's motion and will liberally construe their brief. *See, e.g.*, *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001) ("We also liberally construe the briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel.").

## III. DISCUSSION

The dispute in this case involves whether Chase may enforce the Note. Plaintiffs allege "it is impossible to discern from the writings on the Note itself what entity may be the current holder of the Note" (Court File No. 1-2, Complaint, ¶ 8). Without identifying the current holder, "it cannot be determined what person or entity may have a beneficial interest in the debt and therefore the authority to appoint a successor trustee or otherwise to exercise any rights which might have been provided under the Deed of Trust" (*id.*). Plaintiffs, both in their complaint and in their *pro se* response to Chase's motion for summary judgment, home in on the canceled endorsements as creating questions about Chase's authority to enforce the Note and to foreclose on their property.

In Tennessee, as in many states, "a promissory note is a negotiable instrument, unless it contains a statement that it is non-negotiable, Tenn. Code Ann. § 47–3–104 (West 2012), and thus may be transferred to another party who receives the right to enforce the instrument, Tenn. Code Ann. §§ 47–3–201, 203, 301, 302 (West 2012)." *Dauenhauer v. Bank of N.Y. Mellon*, No. 3:12–cv–01026, 2013 WL 209250, at *5 (M.D. Tenn. Jan. 16, 2013). Moreover, under Tennessee

4

law, the Deed of Trust need not be separately assigned so that the holder may enforce the note; as goes the note, so goes the Deed of Trust. *Id.* (". . . Tennessee law 'treat[s] the note as the principal thing and the mortgage [or deed of trust] as the incident' that follows the note.") (quoting *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–04 (Tenn. 1916)).

Important to this case is what is required to *enforce* a negotiable instrument. In Tennessee, an instrument may be enforced by, among others, "the holder of the instrument." Tenn. Code Ann. § 47-3-301. In turn, a "holder" may be someone "[i]n possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Tenn. Code Ann. § 47-1-201. A note is typically made "payable to an identified person" through a "special endorsement," whereby the endorsement on the note identifies the person to whom the instrument is payable. Tenn. Code Ann. § 47-3-205(a). "When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person." *Id.* On the other hand, an instrument is "payable to bearer" if an endorsement is made by the holder of the instrument and does not identify a specific individual to whom the instrument should be paid; such an endorsement is called a "blank endorsement." Tenn. Code Ann. § 47-3-205(b). "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." *Id.* Thus, if Chase is in possession of the Note and it is either payable to the bearer or to Chase, Chase constitutes a "holder" of the Note and may enforce it.

Therein lies Chase's argument: If the canceled endorsements are not given effect, Green Point negotiated the instrument to Chase and Chase may enforce it. If the canceled endorsements are given effect, U.S. Bank's blank endorsement renders the Note payable to bearer. Chase is in

5

possession of the Note (Court File No. 24-1, Kroplin Aff., ¶¶ 3-4). Either way, Chase is the holder of the Note and may enforce it.

Plaintiffs, proceeding *pro se*, attempt to interpose some degree of doubt into this logic. First, they argue the negotiation from Green Point to Chase was inoperable because Tenn. Code Ann. § 47-3-201(a) provides that "'[n]egotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person *other than the issuer* to a person who thereby becomes its holder" (emphasis added). Apparently, Plaintiffs are under the mistaken impression that Green Point is the Issuer of the Note. "Issuer," however, "means a maker or drawer of an instrument," Tenn. Code Ann. § 47-3-105(c), and a "maker" is "a person who signs or is identified in a note as a person undertaking to pay," Tenn. Code Ann. § 47-3-103(a)(4). *Plaintiffs* are the Issuers in this case, and Green Point, being a person other than the issuer, was capable of negotiating the Note to a holder.

Plaintiffs also argue, as is indicated by Green Point's motion for summary judgment, Green Point could not have negotiated the Note because it sold its interest in the Note to Bear Sterns in 2004 and had no interest in the loan or property after that date (Court File No. 23-1, ¶¶ 6-9). By Plaintiffs' logic, Bear Sterns owned the loan and because no endorsements to or from Bear Sterns are apparent on the Note or the allonge, the endorsement from Green Point to Chase could not have transferred any interest and Chase could not be entitled to now enforce the Note.

The Court understands Plaintiffs' confusion and concedes that their argument in this regard makes considerable intuitive sense from a layman's perspective. Surely Green Point could not *sell* its interest but still be a *holder* capable of negotiating the Note. But this is acceptable under the law of negotiable instruments. Importantly, "[a] person may be a person entitled to enforce the instrument[, defined to include a holder,] even though the person is not the owner of the instrument

6

or is in wrongful possession of the instrument." Tenn. Code Ann. § 47-3-301. What is important is who is the *holder* of the instrument.[4]

The remainder of Plaintiffs' argument focuses on the canceled endorsements and casts aspersions on the validity of the endorsements and the extent to which the allonge is attached to the Note. Plaintiffs point to the fact that stamps were used to identify the entities to which the Note was negotiated. The endorsements are not dated. Bear Sterns and Wells Fargo[3] have no endorsements apparent on the allonge.

But the endorsements in this case are sufficient. First, "canceling" an endorsement is not unheard of. In fact, given the context, it makes perfect sense in this case. "A former holder who reacquires [a negotiable] instrument may cancel endorsements made after the reacquirer first became a holder of the instrument." Tenn. Code Ann. § 47-3-207. After canceling the endorsements, a reacquirer becomes the holder and may negotiate the instrument. All the cancellation does is discharge the canceled endorser's obligation to subsequent holders. *Id.* In this case, it may be that

---

[4] The Court notes that arguments like Plaintiffs', that a succession of sales of their Note may "as a matter of law [] have destroyed the mortgage note itself leaving no one with standing to foreclose a note that have been written off or sold more than 10 times face value to hundreds of individual mortgage backed security owners," have been repeatedly rejected by courts. *See, e.g.*, *Dauenhauer*, 2013 WL 209250, at *4 ("[O]ther courts have concluded as a matter of law that securitization alone does not render a note or deed unenforceable, altering a borrower's obligation to pay back a loan."); *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 641 (E.D. Va. 2010) (rejecting "[p]laintiffs remaining arguments, pled in the alternative, are that securitization of the Loans somehow entitles them to keep the proceeds of the Loans and own the secured Property free and clear"). These background agreements and sales involve "a separate contract, distinct from Plaintiff's debt obligations under the reference credit (i.e., the Note)." *Dauenhauer*, 2013 WL 209250, at *4, (quoting *Larota–Florez*, 719 F. Supp. 2d at 642).

[3] Plaintiffs state they received a letter from Chase on April 5, 2011 stating that the Note was now owned by Wells Fargo. This letter is apparently not in the record. Regardless, for the reasons stated, what is important is who is the holder of the Note, not who owned it.

7

Green Point negotiated the Note to US Bank, who promptly rendered it payable to bearer. Regardless of how Green Point reacquired the Note, it was bearer paper and Green Point was thus a holder of the Note.[4] Green Point reacquired the Note and promptly canceled US Bank's endorsements and renegotiated the Note to Chase. This is acceptable practice under the law of negotiable instruments.

But suppose the Court is wrong here. Suppose *Chase* canceled the endorsements. Little matter, all that does is disadvantage Chase: Chase has released US Bank of its obligations on the Note. Moreover, Chase is empowered to cancel these endorsements by statute. Tenn. Code Ann. § 47-3-604(a) ("A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument [] by . . . cancellation or striking out of the party's signature . . . ."). And it does not matter whether Chase actually acquired the Note from US Bank or from some entity other than Green Point, such as Bear Sterns or Wells Fargo.[5] Whatever entity gave the Note to Chase would have been a holder at the time they possessed the Note because it is bearer paper. When Chase subsequently presented the Note to Green Point for negotiation, Green Point presumably canceled US Bank's endorsements in the process described above. This would be an odd turn of events (especially considering Chase would not have needed Green Point

---

[4] But what if something more unusual occurred, Plaintiffs might ask. Perhaps somehow US Bank came into possession of the Note and endorsed it as bearer paper. US Bank then concluded it required negotiation from Green Point, canceled its own endorsement, and Green Point subsequently negotiated the Note to US Bank. Plaintiffs might argue Green Point could not have later reacquired the Note without an endorsement because the Note was never bearer paper when it was returned to Green Point's possession. However, "[r]eacquisition of an instrument occurs if it is transferred to a former holder, by negotiation *or otherwise*." Tenn. Code Ann. § 47-3-207 (emphasis added).

[5] The Court doubts these entities ever came into contact with the Note itself, but uses them merely as an example.

8

to negotiate the Note to Chase), but even if it did occur it does not render the Note unenforceable.

But the Court could go even further: Perhaps *Chase*'s endorsement was the first and Green Point then somehow improperly negotiated the Note to US Bank thereafter. Again, this has no impact on the Court's analysis. An "'[a]nomalous endorsement' [is] an endorsement made by a person who is not the holder of the instrument. . . . [and] does not affect the manner in which the instrument may be negotiated." Tenn. Code Ann. § 47-3-205(d). Thus Chase would still be the proper party to enforce the Note and these anomalous endorsements would be immaterial. Moreover, because US Bank's endorsement is blank, Chase would be a holder regardless, as the Note was payable to the bearer. Thus any way Plaintiffs cut it, the canceled endorsements do not prevent Chase from enforcing the Note.[6]

The rest of Plaintiffs' arguments are simple to dispose of. To the extent the above discussion did not demonstrate the insignificance of the lack of dates on the endorsements, Plaintiffs' argument the endorsements are ineffective as undated fails because there is no requirement that they be dated, *see* Tenn. Code Ann. § 47-3-205, or at least not one that has been identified to the Court. Nor is it concerning that they are stamped rather than handwritten. *See id.* (requiring an endorsement "identif[y]" the special endorsee); Tenn. Code Ann. § 47-3-110(a) (noting also that the person need only be "identified" by name "or other identification"). Plaintiffs also argue a question of fact remains as to how well the allonge is attached to the Note. However, Plaintiffs submitted a verified complaint in this case that states these endorsements are present on "the final page of this Note"

---

[6] True, nefarious activity could complicate these examples. But Plaintiffs have offered no reason to question the endorsements or the Note other than speculation based on canceled endorsements. But canceled endorsements are no reason to question a Note or the subsequent endorsements. Without any evidence of, or even suggestion of, misconduct, no jury could find in Plaintiffs' favor.

9

(Court File No. 1-2, ¶ 4). This statement, being in a verified complaint, was sworn to by both Plaintiffs (*id.* at p. 10). Moreover, Plaintiffs attached a "true copy" of the Note to the verified complaint complete with this page of endorsements.[5] This issue thus fails to create a question of fact.

Plaintiffs' argument that they dispute the validity of the signatures is also off-base. Plaintiffs point to Tenn. Code Ann. § 47-3-308, which states

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under § 47-3-402(a).

*Id.* at § 47-3-308(a). Plaintiffs state they denied the validity of the signatures in the pleadings. But this is simply not the case. Plaintiffs questioned the circumstances under which the endorsements were canceled and whether it was possible to discern what entity had the beneficial interest in the

---

[5] Plaintiffs, in some of their *pro se* filings, repeatedly dispute the extent to which the allonge is attached and whether they have been provided with a true copy of the original Note. Even if these filings were to be considered sworn statements, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907-08 (6th Cir. 2006) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Moreover, there is simply no reason to doubt that the Note in Chase's possession is authentic and the endorsements appropriately attached, especially in light of the verified complaint sworn to by Plaintiffs and written by prior counsel (*see also* Court File No. 24-1, Kroplin Aff., ¶¶ 3-4) (counsel for Chase acknowledging the version of the Note attached to the verified complaint as true and correct and stating he is in possession of the original on behalf of Chase).

10

Note. But nowhere did Plaintiffs deny the validity of the signatures. Their validity is thus deemed admitted under this section. Moreover, the validity of the signature is presumed and Plaintiffs have brought forth no evidence to suggest the signatures are inauthentic.

Plaintiffs have failed to identify any issue of material fact. Chase is a holder of the Note and entitled to enforce it.[6] The Court will therefore **GRANT** Chase's motion for summary judgment (Court File No. 24).

Green Point also filed a motion for summary judgment indicating it has had no beneficial interest in the Note since 2004. Before Plaintiffs' counsel withdrew, counsel indicated Plaintiffs had no opposition to Green Point's motion (Court File No. 26). And Plaintiffs have not now offered any opposition to Green Point's motion. Accordingly, the Court will also **GRANT** Green Point's motion (Court File No. 21).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[6] In the verified complaint Plaintiffs dispute to some degree whether Wilson & Associates was properly appointed as Successor Trustee. Wilson & Associates was later voluntarily dismissed from this action and none of the parties mentions this issue in its brief. Presumably, Plaintiffs sought to focus on the meat of the matter: whether Chase is empowered to enforce the Note (*see* Court File No. 1-2, Complaint, ¶ 16) (alleging that because "the holder of the indebtedness is uncertain and unclear . . . no enforceable appointment of a Successor Trustee may be made without determining the holder of the Note . . . ."). The Court thus considers this issue immaterial to resolution of these motions and resolution of this case.